GEORGE W. CHAMBERS, Plaintiff, *v.* THE STATE OF NEW YORK,
· Defendant.

## (Claim No. 18226.)

Court of Claims, November 19, 1926.

State — claims against — claim by highway contractor for damages for
    tearing out part of concrete pavement and relaying it to meet objections
    of State Highway Department — State, on inspection of highway, took
    out ten cores from six contiguous slabs of concrete for distance of over
    320 lineal feet of highway and found concrete to be trifle under seven
    inches in thickness at points from which cores were removed — sixty-
    six per cent of measurements taken by division engineer on taking up
    slabs showed thickness of from seven to eight inches — claimant sub-
    stantially performed contract — State liable for compelling contractor
    to remove slabs — contractor not entitled to interest on amount due
    him on contract at time of completion thereof.

Claimant, a highway contractor, having a contract for the construction of a
    concrete highway seven inches in thickness, substantially performed his contract
    and is entitled to be reimbursed for the expense to which he was put in taking
    out and relaying six slabs of concrete after he had completed the contract, in
    order to meet the objections of the Highway Department, where it appears that
    while the Highway Department, on inspection of the highway, took out ten
    cores from six contiguous slabs of concrete for a distance of over 320 lineal feet
    of the highway, showing a thickness of a trifle under seven inches at the particu-
    lar points from which the cores were taken, the division engineer upon taking up
    the slabs of concrete at the direction of the Highway Commissioner found that
    sixty-six per cent of the measurements taken showed a thickness of from seven
    to eight inches, since a builder, who in good faith, and with an intention to
    comply with the contract, substantially complies with it, although there may
    be slight defects caused by inadvertence or unintentional omissions, may
    recover the contract price, less the damage on account of such defects.
The fact that the State compelled the contractor to pull out the six slabs of concrete
    and relay them at his own expense before paying him any part of the sum due
    on the contract, clearly entitles the claimant to be reimbursed for the expense,
    particularly where the State was in a position at all times prior to the entry of
    this claim to pay the contractor, less a certain amount as an allowance to the
    State by reason of any defects it might have found.
But the claimant is not entitled to interest on the amount due him on his contract
    at the time he completed it, in view of his admission that he did not have the
    road ready for inspection by the State until within two months of the time when
    the State made the final payment, since it does not appear that there was any
    undue delay on the part of the State in making final payment.

CLAIM by a highway contractor for damages alleged to have
been suffered by him because he was compelled to tear out part
of his work after he had completed it and reconstruct it in
order to meet the objections of the Highway Department to the

work as originally constructed, and also for interest on the money due him under his contract which he claims the State unreasonably neglected and refused to pay to him when due.

*James E. Cuff,* for the plaintiff.

*Jonathan D. Wilson, Deputy Attorney-General,* for the defendant.

ACKERSON, P. J. This was a contract to reconstruct what is known as the Geneva-Canandaigua highway running between the cities of Geneva and Canandaigua in the county of Ontario. The contract was numbered 3083 and was signed by the claimant on June 30, 1924, and approved by A. W. Brandt, Commissioner of Highways, on July 17, 1924. The road to be reconstructed was an old bituminous macadam highway with dirt shoulders, five and seven-tenths miles in length. The new construction consisted of three miles of what is known as the dual type of construction consisting of two nine-foot strips of concrete separated by a six-foot space of bituminous macadam. The balance of two and seven-tenths miles consisted of a concrete pavement eighteen feet wide.

The contractor commenced his work in due season and on July 1, 1925, had completed the job of laying the concrete. On August 20, 1925, he evidently regarded the work completed and moved his men and equipment to another job. But, about September 3, 1925, the claimant received a letter from Division Engineer Kell calling his attention to the fact that his work could not be accepted until he had removed certain rubbish and stone from the road and also trimmed certain portions of the back slope. His attention was again called to this condition by a letter from Division Engineer Smith dated September 16, 1925. The claimant admits in his testimony that this work was not completed by him and the road put in shape for inspection until the 17th day of October, 1925.

The State in making its inspection of this highway in October, 1925, proceeded, at various places, to drill through the concrete surface of the road and take out cores to determine the thickness of the concrete. The contract provided that the concrete should be seven inches thick.

These cores thus taken out by the State revealed that in some places the concrete was seven inches and more in thickness and in some places slightly thinner than that. Ten cores were taken out of six contiguous slabs of concrete in one of the nine-foot strips extending over a distance of 320 feet which exhibited a thickness as follows:

Core No. 1........................ 6.25  inches thick
Core No. 2........................ 6.50  inches thick
Core No. 3........................ 6.50  inches thick
Core No. 4........................ 6.25  inches thick
Core No. 5........................ 6.50  inches thick
Core No. 6........................ 6.53  inches thick
Core No. 7........................ 6.70  inches thick
Core No. 8........................ 6.25  inches thick
Core No. 9........................ 6.375 inches thick
Core No. 10....................... 6.00  inches thick

These measurements are not exact because they are simply the best judgment of the man who made them for the State, as to the average thickness of the cores. Each core measured differently in different places. It had to be measured in different places, therefore, and an average thickness estimated from such measurements.

Upon this showing the Highway Commissioner compelled this claimant to take up these six slabs and relay them on the ground that such slabs were not seven inches thick and, therefore, did not comply with the terms of the contract which specified that the concrete should be seven inches thick.

The contractor performed this work under protest and took up the six slabs and relaid them at a total cost of $1,451.02. He completed the work about November 21, 1925. On November 23, 1925, he signed the final agreement and on December 2, 1925, the State accepted the contract.

When these condemned slabs of concrete were taken up there was a division engineer on the job to supervise the work. He then made measurements of their thickness. Sixty-six per cent of the measurements he made showed a thickness of from seven to eight inches. From these measurements taken at that time it was found that the average thickness of the slabs was as follows:

No. 1................. average thickness 7.215 inches
No. 2................. average thickness 6.812 inches
No. 3................. average thickness 6.676 inches
No. 4................. average thickness 6.844 inches
No. 5................. average thickness 6.697 inches
No. 6................. average thickness 7.1   inches

The claimant had been a road contractor for twenty years. He seemed to be an intelligent candid man and no question was raised as to his good faith in the performance of the contract. There is not the slightest insinuation anywhere in the evidence that there was any intent on his part to ignore any provision of his contract or to spread the concrete thinner than his contract demanded.

The concrete was laid between steel forms to insure the thickness of seven inches required under the supervision of a State inspector on the job. It does not appear that anybody had any suspicion during the progress of the work that the concrete was not being laid thick enough. Every detail of the work during the progress of performance seems to have been satisfactory to the division engineer on the job whose duty it was to see that the work was performed in compliance with the plans and specifications of the contract. It appears that the first intimation that anybody had that some of this concrete was not seven inches thick was when the State took out the cores in question in October, 1925.

The departure from the required thickness of seven inches in those cores and in the slabs from which they were taken has been set forth above. From those measurements it appears that out of the 301,960 lineal feet of highway constructed by this claimant, the State found a strip 320 feet long which it pronounced defective. It appears that the determining factor in the State's action was the thickness of the cores taken out of this strip of highway. These appear to show that the concrete was a trifle under seven inches in thickness at the particular points from whence these cores were taken. When the slabs of concrete were taken up, however, and measured by a division engineer it was found that sixty-six per cent of the measurements so taken showed a thickness of from seven to eight inches. There is no proof before us of just what proportions of these six slabs were less than seven inches in thickness. Furthermore there was such a slight departure in these slabs from the thickness of seven inches required by the contract that it apparently would have been impossible to determine the exact extent of such departure.

The claimant contends that notwithstanding the above facts which are undisputed in this case yet the work which he did in constructing this highway was under the authorities in this State a substantial performance of his contract.

We believe that the law of this State, as established by the decisions of our courts, sustains him in that contention.

Judge CARDOZO in speaking on this subject in the case of *Jacob & Youngs* v. *Kent* (230 N. Y. 239, 243) says: " Nowhere will change be tolerated, however, if it is so dominant or pervasive as in any real or substantial measure to frustrate the purpose of the contract." Surely, the slight and insignificant change from the contract requirement found here in so small a portion of the whole work could not by any stretch of the imagination be brought within the terms of the prohibition as above stated by Judge CARDOZO.

The Court of Appeals said in the case of *Woodward* v. *Fuller* (80

N. Y. 312, 315): " It is now the rule, that where a builder has in *good faith intended* to comply with the contract, and has *substantially* complied with it, although there may be slight defects caused by *inadvertence* or *unintentional* omissions, he may recover the contract price, *less the damage* on account of such defects."

To the same effect also see *Nolan* v. *Whitney* (88 N. Y. 648). This claimant is exactly within the rule as laid down by those cases. He acted in " good faith " and " intended to comply with the contract " and he did " substantially comply with it." The value of the concrete as originally laid in the six slabs to all intents and purposes was the same as that laid in the second set, and so under the doctrine laid down by Judge CARDOZO in *Jacob & Youngs* v. *Kent* (*supra*) the State would not have been entitled to deduct anything from the contract price payable to claimant upon the completion of his contract even if it had attempted to do so. But it did not attempt to do that. After taking the cores the State was fully aware that there had been a substantial performance of the contract. It was thus in a position to say to the contractor, " We discover that a small portion of this concrete is thinner than seven inches and we propose to withhold a certain amount from the contract price as an allowance to the State by reason of this thin concrete." But it did not say that. It compelled the contractor to pull out the six slabs and lay them over at great expense before it would pay him any part of the sum due him. This it clearly had no right to do because the slabs as already laid were a " substantial " performance of his contract as we understand all the authorities in this State on that subject. The claimant is clearly entitled, therefore, to be reimbursed for the expense that he was put to in taking out the six slabs and relaying them in the amount of $1,451.02.

Each case of this character, of course, has to be determined on its own particular facts. We are not attempting to lay down any general rule to govern in cases similar to this. All we desire to be understood in holding here is that we are not satisfied from the evidence before us that a sufficient amount of this concrete was laid thinner than seven inches to enable us to properly find that the work done by this claimant was not a substantial performance of his contract.

Claimant further contends that he is entitled to interest on $45,380.72, the amount due him on his contract at the time he completed it. His claim demands interest on this amount from August 20, 1925, to December 15, 1925. But on the trial he admitted that he did not have the road ready for inspection by the State until October 17, 1925. Thereafter the State had to make

its inspection, prepare the final account and prepare all the papers for a final settlement with the claimant which was done and he was paid his money on December 15, 1925. It does not appear to us that there was any undue delay on the part of the State. In view of these facts the claimant is not entitled to the interest demanded nor any other sum as interest except as hereinafter stated.

After claimant relaid the six slabs of concrete the State accepted the work and paid claimant the $45,380.72, the balance due under the contract as above stated. Claimant at this time executed the usual final receipt but expressly reserved thereon in writing the right to prosecute this claim against the State. The claim for the cost of relaying the six concrete slabs, amounting to $1,451.02, with interest from December 15, 1925, is, therefore, allowed and the claim for interest on the sum of $45,380.72 is dismissed.

SMITH and PARSONS, JJ., concur.