RUSCIANO & SON CORP., Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 30274.)

Court of Claims, February 24, 1952.

*Murray T. Berman, George H. Fearon* and *Robert J. Feinberg* for claimant.

*Nathaniel L. Goldstein, Attorney-General (James G. Austin* and *Edward L. Bookstein* of counsel), for defendant.

RYAN, J. By written agreement dated August 20, 1947, known as contract No. FA-VWE 47-2, claimant corporation agreed to construct for the State of New York a section of the Van Wyck Expressway in the borough of Queens on an itemized proposal totaling the sum of $2,558,748 of which sum nearly one half or $1,162,280 was bid for the construction of a trunk sewer including the sewer proper, which was about one and one-half miles in length, and also including various chambers, manholes, a parkway crossing, and an item for maintaining traffic. The contract provided that the quantities of materials to be furnished and the amount of work to be done as indicated in the proposal and on the plans were approximate only and that the State of New York was not to be held responsible that any of such quantities and amounts should obtain and that if during the construction of the work conditions should be encountered which required the use of quantities in excess of quantities shown or indicated on the plans the contractor would be paid for the quantities at the prices bid for such items. The contract also provided that claimant agreed to accept the " unit bid " prices in compensation for any additions or deductions caused by variation in quantities due to more accurate measurement,

or by any changes or alterations in the plans or specifications of the work. Accordingly, as the work progressed, monthly estimates showed additions and deductions of quantities and ultimately the claimant was paid the sum of $2,264,241.99 as shown by estimate No. 23. This estimate was a statement of work done and materials in place up to May 21, 1949, the date of completion of the job which was accepted by the State of New York on June 20, 1949. On March 29, 1950, claimant received from the State of New York its final estimate wherein the State of New York admitted that it still owed claimant $71,060.49. This estimate was accompanied by a proposed agreement covering the final account. Claimant, however, advised the State of New York that it declined to execute the final agreement and by letter dated March 30, 1950, reminded the district engineer that it had previously claimed that it was entitled to payment for the excavation for the trunk sewer under item 5 of its itemized proposal and to payment for Portland and natural cements under items 15 and 15D respectively. The final estimate made no provision for payment of these items and claimant's right to recover on them is now in issue before this court. In its letter to the district engineer claimant stated that it had been advised by counsel that, under the provisions of its contract, if the claimant corporation executed said final estimate it might be waiving its rights to recover on said items as claimed. This advice of counsel was apparently based upon the release clause in claimant's contract. Of this we shall have more to say later.

On May 4, 1950, claimant sued the State of New York demanding judgment on twenty-four separate causes of action in the total amount of $368,855.82 less the sum of $75.33 which claimant said had been overpaid by the State on one item. These demands included the amount which the State, by its final audit, admittedly owed claimant. By order dated May 24, 1950, entered upon application of the claimant, this court directed a severance of the claim and a separate trial of that portion thereof relating to certain moneys retained by the State and on May 29, 1950, a consent judgment was entered in favor of the claimant and against the State in the amount of $60,006.32, without interest. By order dated February 19, 1951, entered upon application of the Attorney-General, this court further directed a severance of the claim and a separate trial of that portion thereof relating to moneys retained by the State and on February 21, 1951, a consent judgment was entered in favor of the claimant and against the State of New York in the amount of $11,054.17, with-

out interest. Each consent judgment directed that payment and acceptance thereof was without prejudice to claimant's right to prosecute the remainder of its claim. Each further directed that the question of interest on the amount awarded be reserved until the final determination of this claim. The two consent judgments reduced claimant's causes of action to three and, with the aid of some slight revision in figures, reduced the amount demanded thereon to $297,722.40. The reserved question of claimant's right to recover interest on those sums which the State admittedly owed it will be discussed hereinafter.

The dispute over payment for the excavation for the trunk sewer under item 5 of claimant's itemized proposal and for Portland and natural cements under items 15 and 15D thereof arose soon after claimant commenced work on the contract. By letter dated December 12, 1947, addressed to the district engineer claimant informed the State of New York of its position in the following words: '' Under Estimate No. 3, we received payment for 672 linear feet of trunk sewer, Item 520C-D, installed under the above contract, but find that you have made no provision for payment under Item 5, Trench Excavation, required for trunk sewer, nor for payment under Items 15 and 15D for the Portland and Natural Cement used. Please see to it that payment for the above items is provided for in the next estimate.''

The reply of the District Engineer was dated December 16, 1947, and was as follows: '' To my mind, your letter of December 12th relative to payments under Estimate No. 3 is an obvious attempt to misconstrue the plans and specifications. I quote from the specifications: ' *Items 520A, B, C and D, Trunk Sewer.* The quantity of trunk sewer to be paid for shall be the number of feet of each size of sewer, measured along the center line of the work between payment lines of chambers and including the length through manholes, unless otherwise specified. The price bid per foot shall cover the price of all material, equipment, labor and incidental expense necessary to complete the work, except that Timber Sheeting and Bracing ordered left in place will be paid for under Item 83E and that separate payments for foundation timber and piles will be made under Item 520Q, 520R and 87S respectively.' ''

The two letters above quoted were not offered and received as exhibits upon the trial but were read into the record by claimant's counsel. Upon comparing the transcript of the stenographer's minutes of trial with the contract document which is exhibit 7 before us we find that the quotations in the

district engineer's letter are correct except that the word imme-
diately preceding 520Q in the last line appears in the contract
document as " Items " whereas the singular is used in the
district engineer's letter, if counsel's reading thereof and the
stenographer's transcript of his minutes are both correct. This
easy transposition of the singular with the plural, which is again
manifested in the Attorney-General's Requests to Find may be
recalled a little later. The district engineer did not quote in his
letter the following clause from the contract document which
appeared on mimeographed sheet 39 of exhibit 7 immediately
preceding the clauses which he did quote: " MEASUREMENT AND
PAYMENT Payment for the various parts of the trunk sewer
will be made at the various prices bid for the items hereinafter
listed. Reference made to items other than Item No. 520 in this
specification is for the purpose of defining methods and mate-
rials only, in all such cases payment shall be included in Item
No. 520 unless specified otherwise."

There are other pertinent clauses in the contract which we are
quoting at length in our formal findings which accompany this
opinion. We shall not repeat them in full herein but shall quote
in part or refer to their substance as we may find it necessary.

Claimant's answer to the district engineer's letter of Decem-
ber 16, 1947, was dated January 5, 1948, and stated in part as
follows: " We do not agree with your construction of the
specifications  *  *  *  In the meantime, please be advised
that we are continuing the work under protest."

The issue before this court is not altered from that joined
between the parties in their correspondence hereinabove quoted.
Their letters defined it as clearly as if it had been pleaded and
counterpleaded by the most expert solicitors. The claimant has
proved that in the installation of the trunk sewer it performed
a total of 84,650.8 cubic yards of excavation. The figure is, in
effect, conceded by the Attorney-General who offered no proof
to contradict it. The question is: Is claimant entitled to
recover for this excavation at $3 per cubic yard, the price bid
under item 5 of claimant's proposal? The claimant has further
proved that in constructing the trunk sewer it used 12,210
barrels of Portland cement. The figure is, in effect, conceded by
the Attorney-General who offered no proof to contradict it. The
question is: Is claimant entitled to recover for this quantity of
Portland cement at $3 per barrel, the price bid under item 15 of
claimant's proposal? The claimant has further proved that in
constructing the trunk sewer it used 2,040 barrels of natural
cement. The figure is, in effect, conceded by the Attorney-

General who offered no proof to contradict it. The question is: Is claimant entitled to recover for this quantity of natural cement at $3.50 per barrel, the price bid under item 15D of claimant's proposal? If the claimant's interpretation of the contract is the correct one, the answer to each of these three questions is affirmative. If the district engineer's interpretation of the contract is the correct one, the answer to each of these three questions is negative. *But* if the contract is ambiguous the onus is on the man who " undertook to embody in writing the agreement which the parties had made." (*Strauss* v. *Ernstein*, 232 N. Y. 187, 195, [1921].) In this case that man is the district engineer whose signature of recommendation appears on the contract drawings. Or, it is his superior, the Superintendent of Public Works of the State of New York, whose signature of approval appears on the contract document. In fact it is both of them, acting as agents of this defendant. Their failure to recite clearly the intention of the parties to a contract for the construction of public works may create liability against the State of New York if the true meaning of such a contract is so obscurely expressed that a bidder is likely to be misled and is misled thereby. (*Aldrich* v. *New York Life Ins. Co.*, 235 N. Y. 214 [1923]. See, also, *Evelyn Bldg. Corp.* v. *City of New York*, 257 N. Y. 501 [1931], and *Mason Co.* v. *City of New York*, 249 App. Div. 538 [1937], affd. 275 N. Y. 514.) The Attorney-General concedes as much. However, " in seeking for the intent of the parties the fact that a construction contended for would make the contract unreasonable may be properly taken into consideration." (*Fleischman* v. *Furgueson*, 223 N. Y. 235, 241 [1918].)

Although the district engineer's letter referred to four trunk sewer items, viz., items 520 A–D, we are not here concerned with item 520 D because, by mutual agreement, that item was eliminated from the contract on or about May 22, 1948. The section of trunk sewer to be built under item 520A was six feet six inches by eight feet; that under item 520B was eight feet by eight feet; that under 520C was nine feet by eight feet. For 520A and 520B claimant bid the sum of $125 per linear foot, for 520C claimant bid the sum of $165 per linear foot. Claimant's vice-president, who has been engaged in constructing public works for the State of New York since 1935 and who expressed familiarity with the State's general specifications for contracts, testified that in making up his bid for items 520A, B, C and D he did not include any price for sewer excavation. He further testified that in preparing his estimate for submit-

ting his bid on these items he did not include " any price whatever, either for excavation, trench excavation in connection with the sewer, or for Portland or Natural Cement." This he reiterated on cross-examination. On the other hand the district engineer testified that in making up the engineer's preliminary estimate " of the costs per lineal foot for constructing trunk sewer " he included the cost of excavation and cement to be used therein. But this issue is not to be determined by the statement of the bidder, on the one hand, that he excluded certain elements which contributed to the cost of the project nor by the statement of the district engineer, on the other hand, that he included the same elements in preparing his estimate of costs. Our problem is to ascertain if the intention of the engineer to include these several factors was so clearly expressed in the contract that any bidder must have been apprised of that intention.

The contractor's proposal was submitted in accordance with the specifications of the State of New York, Department of Public Works, adopted January 2, 1942, and, except as modified on the plans or in the itemized proposal, these specifications formed a part of the contract. They were referred to therein as the general specifications. Among other things, they provided under the heading " Item 5 — Trench, Culvert and Bridge Excavation " as follows: " this item will be paid for only in the construction of bridges, culverts, * * * sewers and pipe lines ". On sheet 7 of the contract drawings there appeared a cross-section drawing which was entitled " Trench and Culvert Excavation Payment Lines." Immediately below that drawing appeared the following hand-printed notation: " Except as noted under Item 520 ". On sheet 55 of the contract drawings appeared the following recital: " General Notes. The maximum payment line for unclassified excavation, Item 4S, as shown on the typical expressway section shall define the upper limit of excavation included in the prices bid for trunk sewer Items No. 520." Claimant's officers had the contract drawings before them when they made their bid. And although there is testimony by the claimant's engineer that there was no such item as item 520 and by claimant's vice-president on cross examination that " all of this language throughout the specifications referring to Item 520 or Items 520 was meaningless " to him when he prepared his bid, we do not believe that the use of the singular on one drawing and of the plural on another, or the reference in the general notes on page 1 to the trunk sewer in the singular and without the suffixes of A, B, C and D, created

such ambiguities as to mislead a bidder. On the contrary the notation under the cross-section drawing on sheet 7, hereinabove set forth, clearly indicated that trench excavation necessary to install any of the items 520, whatever suffix they bore, was not to be paid for under item 5 of the general specifications. This was confirmed in the language of the notation appearing on sheet ·55, viz.: "excavation included in the prices bid for trunk sewer Items No. 520."

Claimant's counsel cites a number of instances in the special specifications where, in respect to certain materials embodied in the construction of the trunk sewer — for example vitrified sewer pipe, steel reinforcement bars, structural steel, etc. — the language used was as follows: "*Vitrified Sewer Pipe:* The general specifications for Item No. V-9, Sewer Pipe (Vitrified) shall apply except as to payment." From this counsel argues that where the State intended to include certain items in the price bid per foot for the trunk sewer it clearly provided for such inclusion and that the omission of the word "excavation" from the items which counsel lists as included in the price bid per foot "obviously means that the excavation was to be paid for separately under Item 5." Counsel further argues that the failure to modify the provision that the general specifications for item No. 5 shall apply by what counsel calls the oft-repeated phrase "except for payment" clearly indicates an intent contrary to the inclusion of excavation in the unit price. Counsel also directs our attention to the fact that the typical expressway section shown on the plans did not apply between station 194 and station 206+50, in which area claimant excavated 15,239 cubic yards of material, and argues that, for at least that amount of excavation, claimant's right to recover at $3 per cubic yard is beyond question. We find the answer to all of these arguments in the notation on sheet 7 of the contract drawings hereinabove recited. We repeat it, viz.: "Except as noted under Item 520".

In another argument advanced by counsel he refers to the special specifications for storm and sanitary sewers, which were items 525A to 525R of the contract, and calls attention that in repeated instances the recital of the special specifications is "The price bid shall cover the cost of all material, labor, equipment and incidental expense, including excavation necessary to complete the work". Counsel argues that the explicit inclusion of the words "including excavation" in the several instances cited by him and their exclusion from items 520A–D demonstrates an intent on the part of the State to pay claimant in the

manner and at the rate which claimant now demands. Counsel also calls attention to numerous instances where the State paid the claimant at the price bid under item 5 of the contract for the trench excavation performed in laying specified quantities of vitrified sewer pipe, cast iron pipe and special reinforced concrete pipe. All of these various pipes were of standard dimensions ranging in diameter from six to twenty-four inches. The drawing on sheet 7 specifically indicated the trench and culvert excavation payment lines for these items, a fact which counsel apparently overlooks. All of these arguments are in support of counsel's assertion that the several references cited by him indicate a pattern which delineated an intent to pay for the excavation which was needed to install the trunk sewer as an added item not included in the price bid per linear foot. We have weighed counsel's arguments but we are unable to adopt his theory. Nor do we find any ambiguity in the terms of the contract. Like all other contracts for public works which have come to our attention it was not an uncomplicated affair, being made up of the general specifications, of the special specifications, of mimeographed sheets and of printed sheets, of addenda and of deletions, of maps and drawings. With this formula, in all its ramifications, the claimant's officers were familiar through years of experience. A simpler document might have been drafted. This one, we believe, expressed the meeting of the minds of the parties thereto with clear intent. Accordingly, we make a finding that the prices bid by claimant per linear foot included the excavation necessary to install trunk sewer items 520A, 520B and 520C. We deny claimant recovery for 84,650.8 cubic yards of excavation at $3 per cubic yard.

Claimant's demand for pay at the barrel price bid for Portland and natural cements for the quantities used in constructing the trunk sewer items must likewise be denied. As quoted in the district engineer's letter and as hereinabove set forth the price bid per foot covered the cost of all material necessary to complete the work. Claimant has not explained to us how it could have expected to build a concrete structure without cement. We find that the price bid per linear foot included the Portland cement and the natural cement necessary to complete the work. We deny claimant recovery for 12,210 barrels of Portland cement at $3 per barrel. We deny claimant recovery for 2,040 barrels of natural cement at $3.50 per barrel.

There remains for determination the question of claimant's right to interest upon the amounts recovered by it pursuant to the directions of the two consent judgments. Claimant's per-

formance of the construction work had been completed and was duly and finally accepted by the Department of Public Works on June 20, 1949. As of June 20, 1949, the moneys due claimant could be definitely ascertained by mathematical computation. They were then earned and claimant was then entitled to payment. From that date claimant is entitled to interest on the sum admittedly due it. (*Van Rensselaer* v. *Jewett*, 2 N. Y. 135, 140 [1849].) Interest is an incident of just compensation where liability is based upon the obligation of a contract. (*Prager* v. *New Jersey Fidelity & Plate Glass Ins. Co.*, 245 N. Y. 1 [1927].) Claimant's right to it stems from a reasonable conception of the demands of equity and justice. (*Sweeney* v. *State of New York*, 251 N. Y. 417 [1929].) The debtor State of New York being in default, just indemnity to the claimant must include interest from the time of the default until the discharge of the obligation. (*Agostini* v. *State of New York*, 255 App. Div. 264 [1938].) In this case the obligation was discharged by the entry of the two consent judgments. This means that, except for what may be called a concession on its part, to which we shall hereinafter make further reference, claimant is entitled to an award of interest upon the amount recovered by the first consent judgment, computed from June 20, 1949, to the date of its entry, and upon the amount awarded by the second consent judgment, computed from June 20, 1949, to the date the second judgment was entered. The Attorney-General admits that claimant should recover interest on the moneys which the State retained but pleads for an allowance of " a reasonable time in which to carry out the necessary work pertaining to the preparation of the final estimate without penalties of interest," and declares that " It is a question for the Court to say what part of the nine months from June 29, [sic] 1949 to March 29, 1950 was unreasonable, if any, and to award interest on that portion which it feels, under the circumstances, was unreasonable." By this the Attorney-General proposes that this court should allow the claimant some amount of interest but that we should stop its running on the date of the presentation of the final estimate. He says " the State stood ready and willing to make the payment, but could not under the terms of the contract without waiver of the claim." These words concede a fact which the record discloses. There was never at any time an unconditional tender of payment. The Attorney-General's reference to paragraph 24A of the general specifications which he quotes in full in his brief is pointless. The signed contract which is in evidence before the court discloses that paragraph 24A was stricken from the printed page.

The Attorney-General does not invoke the language of the release clause in the contract as a bar to the recovery of interest on the moneys retained. Nor do we so regard it. We call attention to it lest it may later be said that we have overlooked it. It appears on an unnumbered and extra printed sheet inserted in the bound contract document which is exhibit 7 and under the heading: " ACCEPTANCE OF FINAL PAYMENT " it reads as follows: " The acceptance by the Contractor or by anyone claiming by or through him, of the final payment, shall constitute and operate as a release to the State from any and all claims of any liability to the Contractor for anything theretofore done or furnished for or relating to or arising out of the work done hereunder, and for any prior act, neglect, or default on the part of the State or any of its officers, agents, or employees, excepting only a claim against the State for the amounts deducted or retained in accordance with the terms and provisions of the contract, and excepting a claim for delay or one arising from ' Disputed Work ' as set forth in a preceding paragraph and filed in a signed statement form with the Superintendent. The Contractor is warned that the execution by him of a release in connection with the acceptance of the final payment, containing language purporting to reserve claims other than those herein specifically excepted, or for claims for amounts deducted by the Comptroller, shall not be effective to reserve such claims, notwithstanding anything stated to the contrary, orally or in writing by any officer, agent or employee of the State. Should the Contractor refuse to accept the final payment as tendered by the Comptroller, it shall constitute a waiver of any right to interest thereon."

As recently pointed out by the Supreme Court, Appellate Division, Third Department, when reviewing on appeal a decision of this court in another suit between these same parties, " it would be unfair to deprive a contractor of the interest on moneys due him upon the performance of his contract merely because he was pressing for or intended to present a claim for damages sustained as an incident to his full performance." (*Rusciano & Son Corp.* v. *State of New York,* 278 App. Div. 999, 1000 [1951].) In that case the procedure followed was similar to that which obtained herein. An order of severance was entered, claimant recovered a judgment for the amount which the State admitted it owed and the question of the allowance of interest thereon was reserved until the trial of the issues for additional work which claimant alleged it had performed. There is nothing in the decision of this court nor in its affirmance on

appeal which suggests that the award of interest on the sum of money recovered in the first and consent judgment was dependent upon claimant's success in establishing its right to recover upon the items in dispute. A first reading of the recent decision by the Supreme Court, Appellate Division, Fourth Department, in the claim of *Mentzinger's Son, Inc., v. State of New York,* (278 App. Div. 1019 [1951]) may suggest that it supports such a rule. But an examination of record and of briefs on appeal in the *Mentzinger* · case discloses that the claimant-appellant took the position that it was entitled to interest in the amount of the final estimate, previously paid to it pursuant to the direction of a judgment, recovered after an order of severance, only if it succeeded in establishing that the State had breached its contract in other respects '' since State's breach of contract was responsible for the delay in payment.'' Thus there was not presented to the Fourth Department for its consideration in that case the plain mandate of the statute which directs that where a creditor must resort to the courts to collect his debt and a judgment is rendered in his favor, interest must be included in the award. (Civ. Prac. Act, § 480; *Preston Co. v. Funkhouser,* 261 N. Y. 140 [1933]; *McLaughlin v. Brinckerhoff,* 222 App. Div. 458 [1928]; *D'Angelo v. State of New York,* 200 Misc. 657 [1951]; *Agostini v. State of New York,* 255 App. Div. 264, *supra.*) In this case, although the State of New York admitted that it owed this claimant $71,060.49, claimant was obliged to sue in this court to collect what was due to it. The language of the final payment clause, hereinabove quoted, should not be construed to prevent claimant from recovering that which is '' the ordinary incident for the nonpayment of obligations '' (*Preston Co. v. Funkhouser, supra,* p. 144) that which will make this plaintiff whole. (*Prager v. New Jersey Fidelity & Plate Glass Ins. Co.,* 245 N. Y. 1, *supra.*)

This discussion brings up for examination the growing practice in this court of severing claims in suits on contract. The subject merits review at this time. Our study indicates that the practice was initiated in 1943 in the claim of *Heating Maintenance Corp. of New York v. State of New York* (Claim No. 27304) which was brought to recover upon a contract dated August 23, 1940. That contract contained a clause substantially identical with that which appeared in a contract made by the City of New York and which is quoted in *Cauldwell-Wingate Co. v. City of New York* (269 N. Y. 539 [1935]). Apparently the State of New York did not incorporate such a clause in its public works contracts until after the decision in *Oakhill Contr. Co. v.*

*City of New York* (262 App. Div. 530 [1941]). In the *Heating Maintenance* suit this court, upon application of the claimant, made an order severing the causes of action and directing judgment for the amount admitted by the State as due upon its final estimate, which was $11,010, together with interest on that sum. Subsequently the disputed issues were tried and the claimant succeeded in establishing its right to recover additional amounts. (*Heating Maintenance Corp.* v. *State of New York*, 47 N. Y. S. 2d 227 [1944].) The next instance of an order of severance which we find arose in the claim of *Poirer & McLane Corp.* v. *State of New York* (Claim No. 27818) wherein claimant's first application for " partial summary judgment " was denied without prejudice but a subsequent motion for severance was granted. In his affidavit in support of the motion a vice-president of the claimant corporation stated that the claimant did not at that time make any claim for interest upon the sum of money admittedly retained by the State but requested that the right to interest await the final determination of the action. The court so ordered, severance was granted and judgment was entered for the principal sum only. Thereafter claimant succeeded in a recovery from the State upon the disputed items and thereupon was awarded interest upon the amount so recovered and, in addition, it recovered an award of interest, computed from the date of the accrual of the claim to the date of its entry, upon the amount of the consent judgment. We find that since 1943 there have been at least thirty contract cases wherein this court has granted orders of severance and wherein consent judgments have been entered awarding claimants the amounts which the State has admitted it owed them. We do not know what prompted the officer of the Poirer and McLane Corporation to request that the question of his right to interest on moneys earned should be suspended to await the result of a trial of his other claims. But his suggestion seems to have had its appeal for the practice has since been followed and we find in the record of one case a statement by claimant's counsel that the trial deputy " has advised me that in cases of this type it is more or less customary to save the question of interest until the trial of the main issues. In view of that custom I am willing to await that." (*Wilson & English Constr. Co.* v. *State of New York* [Claim No. 28772, 1948], not reported.)

Apparently the purpose of the severance practice is to avoid the effect of the final payment clause which the State of New York now writes into its contracts for the construction of public works, to enable the contractor to collect his debt and to relieve

the State of New York from continuing to pay interest thereon while litigation is pending. We have hereinabove demonstrated our firm conviction that it does not relieve the State from paying interest from the date the debt accrued to the date it is paid. We fail to see the efficacy of this practice. If it does not result in a multiplicity of suits, it certainly causes a multiplicity of trials. It is wasteful of the time and effort of the court, of the litigants and of trial counsel on both sides. For each claim severed there has been, first, a formal motion requiring an appearance in court. Then for each claim there have been at least two trials. In this case there have been three. Each trial in this court involves the attendance not only of the Judge Presiding but also of a court reporter, a court officer, a trial deputy attorney-general and of one or more investigators or representatives of the department concerned. In preparation for each court appearance there are numerous incidental expenses. Unless the venue of the action is in the Albany district, where this court has its seat, extensive travel is necessary. Examination of the records of the thirty cases studied discloses that only nine arose in the Albany district, while fifteen were in New York City, one in Buffalo and five in Rochester. Results of the trials in the controverted issues in the causes severed are interesting. Of the thirty cases, the claimant was successful in establishing his right to additional payments or damages in twelve, he received a stipulated award in three, he consented to a discontinuance in three, the court dismissed five after trial, including this one, and seven remain untried or undecided. We have taken time to study this situation and to expound this review of it to demonstrate the futility of a practice which we believe should be discontinued. As for the release clause itself, it seems to us that its insertion in the State contracts serves no useful purpose except perhaps to foreclose an unwary or an ill-advised contractor from recovering upon a claim for damages or for extra work performed which may have merit. Alert counsel have found the means of avoiding its effect and have been accomplishing their purpose with the consent of their adversaries, albeit in the cumbersome and expensive manner outlined. If the clause is insisted upon, a simpler method of abrogating its effect and of releasing to a contractor who has satisfactorily completed the work which he has undertaken to perform the sums which he has earned, although he may then be demanding that additional amounts are his due, is definitely in order in the interest of an expeditious and efficacious administration of justice.

We are not any happier than our readers will be at the prospect of a further extension of remarks but we find it necessary to indulge therein. We have already said that except for a concession on its part we find that claimant should be awarded interest computed from the date of the acceptance of its work by the State which was June 20, 1949. That concession is evidenced by paragraph 5 of claimant's complaint and by its prayer for relief wherein it has asked for interest not from June 20, 1949, but only from August 20, 1949. This plea and this prayer claimant has not sought to amend. Instead it has requested a finding that " a period of two months after the acceptance of the work was a reasonable length of time for the preparation and submission of (the) final estimate." Because claimant thus limits its demand its recovery of interest must be likewise limited. (*Barbato* v. *Vollmer,* 273 App. Div. 169, 172 [1948]; *Corning* v. *Corning,* 6 N. Y. 97, 104, 105 [1851]; *Schultz* v. *Third Ave. R. R. Co.,* 89 N. Y. 242, 246, 247 [1882]; *Stebbins* v. *Frisbie & Stansfield Knitting Co.,* 201 App. Div. 477, 482 [1922]; *Foley* v. *State of New York,* 177 Misc. 450 [1941]; also, same case, second trial, 43 N. Y. S. 2d 587 [1943].) However, we decline to adopt the requested finding because there is absolutely no proof before us as to whether the period of sixty days was reasonable or was unreasonable. Without such proof we believe we have no authority to make any finding on such an issue. To that extent this writer now acknowledges an error in his recent decision in the claim of *D'Angelo* v. *State of New York* (200 Misc. 657, hereinabove cited). Therein he found that the contractor's work had been completed December 6, 1948, accepted December 21, 1948, and that the Department of Public Works completed its final estimate on February 9, 1949. Upon such findings it was held that the lapse of time was not unreasonable, citing as authority *Banko, Inc.,* v. *State of New York* (186 Misc. 491, 497 [1946]). But a re-examination of the record of the *Banko* case discloses that it was therein pleaded that " the State wrongfully delayed payments of claimant's final estimate from on or about June 3, 1936, when said contract was fully performed and was duly accepted, until on or about December 12, 1936, thereby depriving claimant of the use of $24,490.94 for said period ". Upon that issue extensive proofs were taken pro and con and upon such proofs the court made a finding " that sixty days after June 9, 1936, would have been a reasonable time for completion of measurements and computations and preparation of final estimate for this contract ". Of course, what might be a reasonable time to measure and compute one completed

project might be too long or too short for another. Hence, as both plea and proof were absent from the *D'Angelo* record and as the claimant therein was demanding interest from the date of the completion and acceptance of the contract our holding that the lapse of time was not unreasonable appears to have been without warrant. The practice of making an allowance to the State Department of Public Works of a period of time in which to make its inspection of. a contractor's completed work, prepare its final account and pay him what is due appears to have been initiated in the case of *Chambers* v. *State of New York* (128 Misc. 227 [1926], mod. and affd. 220 App. Div. 797, affd. 246 N. Y. 608). But in that case the claimant himself upon cross-examination by the trial deputy attorney-general admitted that it took some time for the State to prepare its papers. This was at least an implication that an allowance of time was justified. Similarly, in the case of *Johnson* v. *State of New York* (Claim No. 18428 [1930]) there were concessions upon the record, by both claimant and his counsel which limited the time for the running of interest. And in the previous *Rusciano* case (Claim No. 28309) claimant made the concession in its pleading and brief as it has done here. But in the case of *Sweeney* v. *State of New York* (251 N. Y. 417) hereinabove cited, the date of June 15, 1922, from which date interest was allowed, was the date of the completion of the Sweeney contract. In *Jobbers Credit Assn.* v. *State of New York* (Claim No. 23993 [1937]) interest was computed from March 25, 1935, again the date of acceptance of the contractor's work and we find from an examination of other cases that, in the absence of a concession by claimant or of proof requiring a contrary holding, interest has generally been allowed from the date of acceptance of the work.

Because of claimant's concession here we start the running of interest in this case from August 20, 1949. As no one has testified to the computation of interest the court must assume that burden. (*D'Angelo* v. *State of New York, supra.*) We find that interest on $60,006.32 from August 20, 1949, to May 29, 1950, at 4% amounts to $1,860.20 and we award claimant that sum, with interest thereon from May 29, 1950, to be computed by the clerk upon entry of judgment. We find that interest on $11,054.17 from August 20, 1949, to February 21, 1951, at 4% amounts to $664.48 and we award claimant that sum, with interest thereon from February 21, 1951.

Decision entered on formal findings in accordance with the foregoing.