Bernard Ryan, P. J.
On June 23, 1953, claimant, a Connecticut corporation, entered into a contract with the New York State Thruway Authority by which claimant agreed to construct a portion of the Thruway and, among other things, a bridge over the Mahwah River in the County of Rockland. The completion date specified in the contract was October 1, 1954 but the time was extended on several occasions. Claimant performed the contract work and it was completed October 6, 1955 and accepted December 8, 1955. On or about March 23, 1956 a final estimate and agreement was submitted to claimant which it declined to sign. Subsequently, and on January 23, 1957, by order of the court, this claim, which had been duly filed, was severed and judgment was entered for $85,326.88, the undisputed amount due on the contract. The order for severance preserved the question of the claimant’s right to interest on that sum until the trial of the disputed items of the claim.
That trial has now taken place and under date of July 20, 1959 we have received claimant’s requests to find, the Attorney-General’s requests to find having been submitted a few days earlier. We have given due consideration to the several requests thus submitted and have adopted them or refused to adopt them as appears by the markings on said documents which are filed herewith. We have also duly considered the testimony presented on the disputed work and the oral and written arguments of counsel. We have come to the conclusion that, except for the right to recover interest upon the balance due under the terms of the contract, claimant cannot recover herein.
There is little dispute about the facts. In connection with the construction of the said Mahwah River bridge claimant was required to install 24 tubular cast-in-place concrete piles 24 inches in diameter in 2 rows of 12 piles each at specified *505 locations. Item 85TX of the special specifications relating to said installation allowed a tolerance of % inch per foot from the vertical. This tolerance made compliance with the terms of the contract possible even if the piles, when driven, leaned in diverse directions to the extent of 15 inches, the piles being 60 feet long. Claimant subcontracted the pile-driving with approval of the defendant and on or about April 16, 1954 the subcontractor, having completed its work, removed its equipment and left the job. At that time the piles were in proper alignment and location.
Also, as part of its work, claimant was required by the contract to excavate rock located between certain contract stations and deposit the same in the Mahwah River on the east and on the west side of the location for the new bridge between certain other contract stations. This fill area was to form a part of the roadway and the foundation for the abutments of the bridge. Claimant began that operation July 3, 1953. By January 22, 1954 rock had been deposited.on the east side of the river to an elevation approximately 3 feet above the river level and on the west side of the river to an elevation approximately 6 or 8 feet above the river level. All of the rock fill was placed as shown on the plans, except for a small portion of the abutments where earth fill was to be placed after the piles had been installed. Two rock platforms were thus created, one for each bank of the river, in order that the pile-driving subcontractor would have working platforms for his pile-driving equipment and operations. After the pile-driving subcontractor departed claimant proceeded to place the balance of the rock in the Mahwah River area so as to bring the rock fill up to the planned required height, and this operation was completed about May 25, 1954. Altogether approximately 113,000 cubic yards of rock were placed and the operation of placing it was done in accordance with contract specifications and under the supervision and inspection of the defendant’s authorized representatives.
The defendant’s survey party resurveyed the completed piles on June 8, 1954. Claimant complains that the results of that survey were never communicated to it, that the report thereof was indorsed by someone “superseded” and that upon the trial no one was called to explain this survey or the reasons for its having been so marked. We are not informed in what way these omissions have importance. However, in the latter part of July, 1954 the representatives of both the claimant and the Authority observed that two of the piles were out of alignment and thereupon another survey was made on July 31, 1954. .It was then discovered that 23 of the 24 piles were more than *506 % inch, out of position at their tops, that 20 were more than 2 inches ont of position at their tops, that 11 were more than 6 inches ont of position at their tops and some were 14 or 15 inches ont of position. Claimant was required by defendant to do corrective work which cost $54,384.67. It is for that sum which it now sues.
Engineering experts testified, and it would seem to be a reasonable explanation, that the movement of the piles, at one time in alignment, was due to the settling of the rock fill. It is claimant’s theory that “ The sole cause of this movement was the requirement of the contract documents, to wit, the placing of the rock fill, which caused the river bottom to move, which in turn caused the movement.”
We are asked, too, to make a finding that the movement of the piles “was a necessary consequence of the express provisions of the contract, which required claimant to excavate specified areas of rock and deposit the rock as fill at the locations shown and specified in the contract plans within the time prescribed in the contract for the performance of the contract work ’ ’; and also to find that ‘ ‘ there was insufficient time to allow the fills to age and to take their natural position before further work was done in the same vicinity.”
These provisions, says the claimant, were in reality a fault in design and on this theory it seeks to recover on the authority of a well-established line of cases which we deem it unnecessary to cite herein. We believe it is a mistaken theory.
A layman, we think, would be somewhat puzzled by the specification of the % inch tolerance leading to 15 inches disalignment in a 60-foot tall pile, as indeed the court was. We are quite satisfied that it was never intended that piles which were 15 inches out of alignment at the top would be acceptable work. However, there was testimony that a reasonable field tolerance of permissible variation from the planned position of each pile at the top would not exceed % inch. Claimant argues that the corrective work required of it was designed for aesthetic value only and that corrective work adequate in value in structure and in strength could have been performed for not more than $10,902.12. By reason of this claimant’s counsel asserts that it should recover at least the sum of $43,482.55.
We are convinced that the work as ultimately accomplished not only presented a symmetrical appearance but -was also necessary to guard against any future stress on the bridge structure which might result in twisting of the piles. We *507 believe that the concrete encasement, which admittedly was expensive, was not an nnreasonahle or arbitrary requirement. After all a bridge must be safe for heavy traffic. We refuse to find as requested by claimant that there was no structural need to place the concrete encasements.
We find no proof of faulty design in the original plans and specifications. It may well be that the completion date of the contract was too early and that had more time been afforded for the rock fill to settle before pile-driving was begun the movement of the piles would not have occurred. But claimant was not required either to bid or to enter upon the contract. When it did so it proceeded with full knowledge of the provisions for the placing of fill and the prescribed time for completion. It thereupon assumed the risks incident to the work undertaken.
Moreover the contract document contained the following provision: “Damage. All damage, direct or indirect, of whatever nature resulting from the performance of the work or resulting to the work during its progress from whatever cause, including omissions and supervisory acts of the State, shall be borne and sustained by the Contractor, and all work shall be solely at his risk until it has been finally inspected and accepted by the State. The Contractor, however, shall not be responsible for damages resulting from faulty designs as shown by the plans and specifications nor the damages resulting from wilful acts of Department officials or employees.”-
We have said that there was no proof of faulty design. There is no suggestion of willful acts of the defendant’s officials or employees. We hold claimant has not made out a cause of action for breach of contract.
With respect to interest we award it in accordance with the principle enunciated in Rusciano & Son Corp. v. State of New York (201 Misc. 690, affd. 281 App. Div. 733 [1952]), which we believe has become settled law. Although the Attorney-General in his brief refers to a stipulation that two months was a reasonable time to prepare and submit the final estimate and argues that interest should not begin to run until two months from December 8,1955, the date the contract work was accepted, a review of the stenographer’s minutes of the trial discloses only a colloquy about such a stipulation. There is no clear-cut statement of agreement between counsel as to the date on which interest should begin to run. The job was completed October 6, 1955. • Claimant asks only for interest from December 8, 1955. We believe this demand reasonable. The *508 clerk will compute interest at 4% upon $85,326.88 from December 8, 1955 to February 8, 1957, the date of receipt by claimant of voucher in payment of the judgment entered upon the order of severance. That amount is to be awarded to the claimant herein. The clerk’s computation may or may not agree with the figure given by claimant’s counsel.
Upon the foregoing, and upon the findings of fact recited in the several requests to find, entry of judgment is directed dismissing the claim for extra costs of performance and allowing interest as hereinabove set forth.