Bernard Ryan, P. J.
Claimant undertook a highway construction contract for the State of New York and completed its work on July 20, 1956. Indeed, with minor exceptions, the work was actually done on or about July 13, 1956. The State approved and officially accepted the .work on August 15, 1956, at which time, according to the State’s audit, there was due and owing to the claimant the sum of $117,360.12. However, the State did not complete its audit until December 24, 1956 on which date it submitted to claimant a proposed final estimate and a proposed final agreement which called for the payment of the sum above stated. Claimant declined to sign the final agreement or to accept payment under its terms. Ultimately, as a result of suing the State and obtaining from this court an order of severance and a judgment for the amount, claimant collected the said sum. For a discussion of the severance practice in this court see Rusciano & Son Corp. v. State of New York (201 Misc. 690, 702 et seg. [1952], affd. 281 App. Div. 733).
In accordance with a custom which has grown in practice the order, decision and judgment for severance reserved decision as to the right of claimant to recover interest on the stated sum until the final determination of other issues between the claimant and the State of New York. Those issues have now been litigated and resolved under a claim numbered 34727 and claimant demands in this claim, No. 34532, an award of interest in the amount of $2,907.92, which is the computation of interest on the sum paid under the judgment entered upon the severance order, computed from August 15, 1956 to March 26, 1957, the date on which that judgment was entered.
The right of a creditor to interest upon moneys owed him from the accrual date of the debt has long been recognized and needs no citations in its support. However, that right was reaffirmed upon appeal from an award in another Rusciano claim. Rusciano & Son Corp. v. State of New York (278 App. Div. 999 *526 [1951]). We renew the discussion of the subject in this instance only because the Attorney-General now seeks a ruling which would be a departure from the practice long since established by the decrees of this court. He asserts his belief “ that the Department of Public Works should have a reasonable time to process the final estimate.” Also, he argues, “ that time is not indicated in the normal situation until the contractor returns the final payment, which is a symbolic act under which he refuses the final estimate, and, at that time the money is due to him and the State’s position is, the interest (then) begins to run.”
In this case the contractor returned the final estimate on December 27, 1956, three days after the State’s letter transmitting it. He could scarcely have acted sooner. Asked by the court if he was presenting that date for designation as the one from which interest should run, the trial Deputy Attorney-General replied in the negative, specified no particular date, but requested that the court find a “ reasonable ” time for the defendant “ to process the final estimate in this ease.”
Complying with the Attorney-General’s request, and to that end, the court permitted, over the objection of claimant’s counsel, testimony by three employees of the State, viz.: (1) the Chief Account Clerk, Bureau of Contracts, Department of Public Works; (2) a clerk subordinate to the Deputy Chief Engineer of Highway Construction, Department of Public Works; (3) the State’s Engineer in the field during the construction under claimant’s contract.
The first witness testified that he processed 200 to 300 final estimates a year and that in 1956 it took an average of 18.6 days between the time he received the approved final agreement and the time it was paid by the State Comptroller. But first he had received the final estimate which he held until he received from 'the office of the Chief Engineer an approved copy of the final agreement.
The second witness described that part of the work which was his duty to perform, namely the preparation of the final agreement. This “ is a statement of the contract as it was actually built ” * * * which has “ every item in the contract stated, the contract quantity, the final account as built, and the increase or decrease for that item ” and “ an explanation accompanying every increase or decrease.” In 1956, when the office was undermanned, this would have taken two months as against two weeks at the date of trial.
The third witness described the calculations made from cross sections, earth work sheets and structures, the make-up of the final book and the procedure up to the time he turned the final *527 estimate over to the Estimate Bureau. On this job his work took approximately five months. He admitted, however, that the final survey could, 11 to some degree ’ ’, be made before the physical completion of the contract and that with ‘ ‘ the proper amount of assistance ” the final survey could be done at about the time of the actual completion of the work.
That about sums up the testimony presented by the Attorney-G-eneral upon which he proposes that this court should say that the claimant should not have interest on the money due it from the date that the contract work was accepted by the State but should make up its mind as to what lapse of time between acceptance of the work and payment for it was ‘ ‘ reasonable ’ At this point it should be remembered that in those instances wherein this court has allowed the State of New York 60 days to prepare its final account there has been a stipulation on behalf of the claimant, or a waiver by it, that it would not ask interest for that period of time. No such waiver, no such stipulation, has been offered here.
The proof before us is far from impressive, insufficiently so for us to decline an award of interest from the date of the acceptance of the contract work which, as we have pointed out in early cases, is the real accrual date of the debt. From that point claimant was entitled to the use of the money which it had earned. The record discloses that it took five months to make up the estimate of the District Engineer’s office. It then took until February 25 to move the estimate from the office of the Deputy Chief Engineer of Highway Construction to the desk of the Chief Account Clerk and 38 days more, or until April 4,1957, before the approved amount was paid by the State Comptroller. In the meantime, the judgment of severance had been entered.
Upon this record we find that the State of New York has not presented a valid defense to the claim for interest. Accordingly an award is directed in the sum of $2,907.92, together with interest thereon from March 26,1957.