Louis D'Angelo et al., Doing Business as Triple Cities Construction Company, Claimants, *v.* State of New York, Defendant. (Claim No. 29779.)

Court of Claims, July 7, 1951.

*Herbert M. Matties* and *Abraham E. Gold* for claimants.

*Nathaniel L. Goldstein, Attorney-General* (*Donald C. Glenn* and *Lawrence H. Wagner* of counsel), for defendant.

RYAN, J. This suit was brought to recover damages for breach of contract and for extra work, labor and services performed. After the matter was at issue the parties consented to entry of judgment in favor of claimants in the sum of $29,835.87, the balance admitted by the defendant to be due and owing upon the contract for the quantities furnished in constructing a highway at the line item prices. The award was made without interest and the question of the right to recover interest was directed to be held in abeyance until the trial of this part of the claim. We shall consider this question later.

After the severance of the first cause of action and after the entry of judgment thereon, claimants, upon due notice, moved to amend their claim by adding thereto allegations of certain items of extra work, labor and services performed not included in the sum awarded as hereinabove recited and not previously pleaded. The motion was granted and an order of amendment granted. Although the Attorney-General appeared and opposed the motion and at the time did not claim surprise nevertheless he again attacks the ruling of the court and, since he does, we make comment. The Attorney-General's position is not well taken. All of the items pleaded and on which proof was offered arose out of the work of construction under the contract and the circumstances surrounding these disputes were or should have been within the knowledge of the engineers who represented the

State of New York. There has been no laches on the part of the claimants, the defendant has not been prejudiced and the amendment was proper and within the discretion of the court. (Court of Claims Act, § 9, subd. 8; *Murray* v. *State of New York*, 202 App. Div. 597 [1922]; *Burrows Paper Co.* v. *State of New York*, 174 Misc. 850, 856 [1940]; *Warranty Holding Corp.* v. *State of New York*, 59 N. Y. S. 2d 512 [1946]; *Banko, Inc.*, v. *State of New York*, 186 Misc. 491 [1946]; *Fitzgerald Bros. Constr. Co.* v. *State of New York*, 188 Misc. 940 [1947]. See, also, *Murray* v. *State of New York*, No. 24923 [1939], unreported, and *Street Bros. Constr. Co.* v. *State of New York*, No. 25386 [1940], unreported.)

Claimants entered into a contract with the State of New York to construct a farm to market, or secondary, road known as the Phoenicia-Stony Clove Highway, Part 2, FAS SH 47-9 State highway. The construction was to be three miles of grading, drainage and bituminous macadam pavement. The road ran through the Catskill State Forest Preserve and where it deviated from the old location the highway was to be built on lands owned by the State of New York as part of the Preserve. Item No. 1S of claimants' itemized proposal was for the necessary quantities of clearing and grubbing, a lump sum bid in the amount of $2,331.87. Before preparing their bid claimants inspected the site and found, in the area to be cleared and grubbed, a timber growth. There being nothing in the contract to prohibit them, claimants planned to salvage the timber from the areas which they would clear and grub and to sell it at a profit and they made their lump sum bid accordingly. Claimants' bid was filed and accepted on September 17, 1947. Thereafter and before the written contract was signed claimants were informed by a representative of the Department of Public Works that the State Conservation Department demanded that the trees cut in clearing for the building of the new road be piled in four foot lengths on the right of way and made available for crews of that department to collect for use on State recreational campsites. This information was available to the Department of Public Works on September 16, 1947, but was not made known to claimants until September 30, 1947. Thereupon claimants offered to fell the trees if the State would remove them so that claimants could proceed with their work. There ensued extended correspondence, in writing and by telephone, between the State Department of Public Works and the State Conservation Department in which the latter department amended its requirements with respect to

the timber " to provide that any oak, ash and hemlock saw logs designated by the representative of this Department shall be cut in log lengths and made available on skidways to our trucks. * * * The balance of the wood to be cut in 4 ft. lengths as originally provided." The final position of the State was not communicated to the claimants until November 18, 1947. In the meantime and on October 8, 1947, within three weeks from the award to them of the contract, the claimants had started work. Clearing and grubbing was, of course, one of the first operations on the job. Claimants reached that part of the right of way which was on forest preserve lands on October 24, 1947. Although it was, and still is, claimants' contention that in accordance with the usual and standard practice, custom and agreement, trees cut pursuant to the contract Item 1S became the contractor's property, claimants yielded to the demands of the Conservation Department, transmitted to them through the Department of Public Works. This was, however, upon the understanding that the saw logs and cord wood would be removed promptly by the State. Claimants proceeded to fell the trees and the State removed part of the ash logs. But it is undisputed that the State did not fully or promptly carry out its part of the agreement. The trees remained in claimants' way until nearly the close of the job in the fall of 1948. Some of them had to be removed by the claimants. In general, claimants were impeded and interfered with in the progress of their work.

To this item of the claim the State offers several defenses. The first is that section 1 of article XIV of the Constitution, which provides that the forest preserve shall be forever kept as wild forest lands and that the timber thereon shall not be sold, removed or destroyed, prohibited claimants from availing themselves of any salvage from the trees and that they should have known the law and the Constitution before they bid. The fact is that the plans for the highway to be built through the forest preserve necessarily contemplated that a certain amount of growing timber would be cut, removed or destroyed. The Attorney-General concedes as much. This was a proper exercise of authority by the State Department of Public Works. (L. 1921, ch. 401, as amd. by L. 1937, ch. 488.) As the plans did not call for the removal of timber to any material or unreasonable degree, the Constitution was not violated. (*Association for Protection of Adirondacks* v. *MacDonald,* 253 N. Y. 234 [1930].)

A second defense interposed is that the claimants had actual knowledge of the Conservation Department's demand for the

timber prior to the time they started work and prior to the actual signing of the contract on November 1, 1947; that claimants chose to enter into the contract with full knowledge that they would not be permitted to dispose of the timber; that the contract was integrated by the writings (*Higgs* v. *de Maziroff,* 263 N. Y. 473 [1934]); that claimants are attempting to vary the terms of the written agreement by parol evidence. As we have already pointed out, the contract was awarded to the claimants on September 17, 1947, upon a bid which they had made which contemplated that they would have the avails of whatever could be salvaged in the clearing and grubbing area. Although the formalities of the execution of the contract were not carried out until several weeks later, and not until after the claimants had entered upon their work, the minds of the parties met when the claimants' bid was accepted by the State. It seems to us that it is the State of New York, rather than the claimants, which is attempting to interpolate transactions leading up to the making of the contract for the purpose of varying or modifying it or extending its terms. (*Imperator Realty Co.* v. *Tull,* 228 N. Y. 447 [1920].) However, the fact is that the verbal agreement with respect to the logging and cording of the timber and its removal by State maintenance forces was induced by the affirmative act of the State's district engineer. He, it was, who called one of the claimants into his office and made known to him the demands of the Conservation Department. Thus the written agreement was modified by the subsequent verbal understanding, finally confirmed by the letter of November 18, 1947. The State is estopped from claiming that this was invalid. (*Lieberman* v. *Templar Motor Co.,* 236 N. Y. 139 [1923]; *M. H. Metal Products Corp.* v. *April,* 251 N. Y. 146 [1929].)

The Attorney-General's further defense to the item is that claimants having availed themselves of the lump sum bid for doing all necessary work in the area to be cleared and grubbed cannot recover more than the amount of their bid and this amount they have been paid. Although there is proof that at the time the contract was let there was an available market in the area for timber on the stump, and that the claimants could then reasonably anticipate the sale of the timber at a profit, and although findings to such effect have been proposed and are adopted by the court because the proof is uncontradicted, nevertheless, claimants are not suing for the loss of profits. Their claim is for the extra amount of time, labor and use of machinery and equipment involved in the performance of their work due to

the interference by the State and its delay in getting the timber and cordwood out of the claimants' way. On this basis we believe claimants are entitled to recover and we make an award to them on this item in the amount of $7,273.56.

Item No. 2 of the claim is based on change of location of the center line of the highway which was shifted to the east to avoid undercutting a mountain of talus on the west side of the right of way. This shift eliminated the necessity of slope protection in the area in question on which claimants had bid $20 a cubic yard for an estimated 250 cubic yards in the performance of which they had expected to net a profit of $3,000. By the shift in location the claimants were deprived of the use of a quantity of cut stone in an existing railroad abutment which they had planned to utilize in the performance of the slope protection item. The shift in the center line of the road extended from Station 128 to 142, a distance of 1,400 feet. It is claimants' contention that all of the work of excavation and fill required on the right, or westerly, side of the highway was substantially completed before the change in location was directed by the State engineer, which was on or about June 10, 1948. This contention is not supported by the proof. The area had been roughly graded but we are unable to make a finding as requested by claimants that the work of excavation "was substantially completed." According to the State engineer's testimony there was approximately 900 cubic yards of material yet to be removed on the left side between the stations mentioned. Claimants' counsel asserts in his brief that the removal of this material would have been profitable to claimants but their demand is not based upon the denial of a certain amount of excavation. Rather, claimants seek to recover the extra cost of performing an estimated 400 cubic yards of excavation in the new location on the right hand side of the road. For this excavation they have been paid at the contract item price. It appears that the material excavated was not dissimilar to that on the left hand side of the road. We are unable to find in the record sufficient proof to support a finding that claimants are entitled to recover anything extra on this item. With respect to the elimination of the slope protection it appears that claimants agreed to the deduction of 144 cubic yards by supplemental agreement No. 1, dated August 20, 1948. By this they are estopped from recovery. (*Quinn-Meissner, Inc.,* v. *State of New York,* Claim No. 25251 [1941], affd. 268 App. Div. 936.) It does not appear that the additional

106 cubic yards originally estimated were needed or that the work was ever performed. Hence the final agreement properly set forth a deduction of that quantity.

Item 3 of the claim deals with 538.2 tons of crushed stone chips not provided for in the original contract but furnished and rolled by claimants as an extra for which they have been paid the agreed price of $4 per ton. The basis of claimants' demand is that they were induced to agree to the said price by the representations of the State's engineer who stated that the stone could be purchased from the Catskill Mountain Stone Company and by that company delivered and spread ready for rolling at a price of $3.55 per ton and that the State would pay claimants 45¢ per ton for rolling it. The said stone company furnished and delivered the stone but declined to spread it and claimants sue on a *quantum meruit* for the work, labor and services performed by them in excess of the amount which they have been paid. There can be no recovery on this item. All that O'Hara, the State engineer, did was to telephone the Catskill Mountain Stone Company and relay to Thomas A. D'Angelo, one of the claimants, who was present in his office at the time, the price quoted to him. Mr. D'Angelo testified that Mr. O'Hara " made all arrangements." But upon inquiry by the court as to whether he had any recollection of confirming the order with the Catskill Mountain Stone Company, the witness replied " All I confirmed was the price ". Surely if the claimant D'Angelo did not take the trouble to inquire from the purveyor of the stone what would be included in the price he cannot charge the State for his omission. He was capable of making his own terms with the stone company. We find that O'Hara did not intentionally nor unintentionally misrepresent to D'Angelo what the stone company's representative said the company would do for the price quoted. There may have been a misunderstanding. But if the stone company repudiated its offer the State of New York cannot be held liable for the extra expense caused the claimants.

Items 4 and 5 of the claim are based on the difficulties which the claimants had with the natural material which they encountered when they excavated for the roadbed of the highway. This material contained large boulders and was not easily manipulated. It was unsuitable for fill and the claimants proposed to the engineer in charge that they would substitute for it finer material to be drawn from a gravel pit located near the south end of the project. They assert that they supplied 10,000

cubic yards for which they demand payment at the contract price bid for Item 39 which is known as "Foundation Course Run of Bank Gravel". This price was $2.50 per cubic yard. Claimants admit that they have been paid for this 10,000 cubic yards at the rate of 55¢ per cubic yard as unclassified excavation. This item (4) must be disallowed. In the first place, there was no measurement of the quantity of the material used and the 10,000 yards is purely an estimate. In the second place, the proposition to substitute this material for the unsuitable natural material was made by the claimants and acquiesced in by the State's engineer and although he did not direct the claimants not to use it, there was no actual direction by the engineer that they should use it. Beyond that, the specifications for Item 39 prescribed not only the kind of material to be used but the method of placing and compacting it. There is a complete failure of proof that the material was placed in the fill in a manner to comply with the specification for the item for which the price was fixed at $2.50 per cubic yard.

Claimants further contend that in fill sections where the natural material was used the engineer in charge required them to bulldoze and push the large boulders beyond the "neat lines", or limitations of the contract work, and that in so doing finer and suitable material was spread and wasted. They demand payment for an estimated quantity at the overhaul price of one cent per cubic yard per station hauled. Again, there was no measurement showing the quantity of overhaul furnished and the demand of claimants for payment for an additional 114,066 cubic yards is purely an estimate. It appears that the large boulders "caused no difficulty in making the heavy fills" but as the fill got to the higher elevations it was necessary to eliminate them. The direction by the engineer that this be done was proper. This item (5) is disallowed.

The remaining items of the claim are No. 6, for trimming road sections, for which we make an award of $8,713.50, No. 7, for extra excavation between Stations 138 and 140, for which we make an award of $1,465.15, and No. 8, for extra work performed beyond the demands of the contract for scarifying gravel and for the delays resulting therefrom, for which we make an award of $3,000, the amount demanded by the claimants and which we believe to be fair and reasonable and supported by the record.

In computing damages on Items 1, 6 and 7, we have adopted the figures in claimants' Exhibits 8, 28 and 33 for cost of labor,

job supervision and use of machinery. To this we have added 15% of the labor cost to cover cost of insurance, including workmen's compensation, public liability, unemployment, etc., and on the total of these figures we have allowed 5% for overhead and 10% for profit. This explains why the amounts awarded vary from the amounts demanded in claimants' Requests 24, 79 and 87. We have credited the State with $2,331.87 on Item No. 1 and with $55 on Item No. 7. While we allow the cost of job supervision, we make no allowance for main office overhead as that is covered by the allowance for overhead and profit which we believe to be fair and reasonable. (*Wright & Kremers, Inc.*, v. *State of New York*, Claim No. 21683 [1932], mod. 238 App. Div. 260, mod. 263 N. Y. 615; *Seglin Constr. Co.* v. *State of New York*, Claim No. 23906, 22 N. Y. S. 2d 94, 99 [1940], affd. 262 App. Div. 782, motion for leave to appeal denied, 262 App. Div. 797; *Seglin-Harrison Constr. Co.* v. *State of New York*, Claim No. 23165, 30 N. Y. S. 2d 673 [1941], mod. 264 App. Div. 466; *Wilaka Constr. Co.* v. *State of New York*, Claim No. 24221, 52 N. Y. S. 2d 91 [1944].)

We now consider the question of interest on the sum of $29,835.87, the amount of the judgment previously entered in favor of the claimants. Their work was completed December 6, 1948, and accepted by the State of New York on December 21, 1948. The State completed its final estimate on February 9, 1949. This lapse of time was not unreasonable. (*Banko, Inc.*, v. *State of New York*, 186 Misc. 491 [1946], *supra*.)[1] Since the 1927 amendment (L. 1927, ch. 623) of section 480 of the Civil Practice Act, the direction to award interest on every verdict in a contract action has been mandatory whether the demand is liquidated or unliquidated. (*McLaughlin* v. *Brinckerhoff*, 222 App. Div. 458 [1928].) Where there is no question of fact as to the amount it is the duty of the court to add to the verdict of the jury interest from the date of the breach of the contract. (*Greater New York Coal & Oil Corp.* v. *Philadelphia & Reading Coal & Iron Co.*, 278 N. Y. 270 [1938].) Where the issues of fact are tried without a jury, as in this court, a direction for an award of interest should be made by the one making the award. (*Klausner* v. *Queens Fur Dressing Co.*, 130 Misc. 579 [1927].) Proper practice indicates that proof of computation of interest should be offered for the benefit of the triers of fact. This avoids

---

[1] See, also, *Rusciano & Son Corp.* v. *State of New York* (Claim No. 28309. [1950], Finding 89, affd. 278 App. Div. 999).

uncertainty as to whether or not interest has been included in the amount of the award. (*First International Pictures* v. *F. C. Pictures Corp.*, 262 App. Div. 21 [1941].) However, it has been held that proof, and even demand in the complaint, are unnecessary (*Quinn* v. *Sigretto*, 229 App. Div. 727 [1930]) and that the court may make its own computation. (*Mathis* v. *Matthews*, 39 N. Y. S. 2d 242 [1943].) In this case no arithmetical proof was offered. Hence the duty to compute is ours. We award claimants interest from the date of the final estimate, February 9, 1949, to July 26, 1949, the date of entry of the previous judgment, upon the sum of $29,835.87. At 4% (State Finance Law, § 16) we find this to be $553.62. This sum does not represent percentages on moneys earned, which were agreed to be retained by the State until the contract was completed, but is the balance actually and admittedly due upon the completed contract. Therefore, *Litchfield Constr. Co.* v. *City of New York* (244 N. Y. 251) is not an authority against this award.* Inasmuch as claimants were entitled to the payment of the said sum of $553.62 on July 26, 1949, and the use of it has been withheld from them since that date they are now entitled to interest thereon to the date of entry of judgment.

The awards under Items 1, 6, 7 and 8, of course, carry interest from February 9, 1949, to the date of entry of judgment.

Decision in accordance with the foregoing.

---

* The decision of the Third Department in *Rusciano & Son Corp.* v. *State of New York* (Claim No. 28,309, 278 App. Div. 999) cited *supra* in footnote 1, was handed down while the issues on the several items in this claim were under consideration and after we had written the above sentences on the subject of interest for incorporation in this opinion. The Third Department reiterates the rule expressed in *Agostini* v. *State of New York* (Claim No. 24,345, 255 App. Div. 264 [1938]) and upholds our award of interest in *Banko, Inc.,* v. *State of New York* (Claim No. 25,336, 186 Misc. 491, *supra* [1946]) and other similar cases.