Bernard Ryan, P. J.
The above-entitled claimant is a partnership consisting of several individual engineers, each licensed to engage in his profession in this State. As such entity they sue for the agreed and reasonable value of services rendered pursuant to a contract with the State of New York acting by and through the Superintendent of Public Works, less certain payments received on account. As originally pleaded the claim contained five causes of action. The first cause of action was for a balance due on account in the amount of $153,389.31. This demand has been reduced to $82,517.12 as the result of voluntary payments by the State in the sum of $40,823.23 and additional payments, by virtue of a severance order, decision and judgment of this court, in the amount of $26,685.91 for retained percentages, and in the amount of $3,363.02 for utility design. The question of the -claimant’s right to recover interest on certain sums already paid was reserved in and by the prior decision. The question of the *508 right to interest upon a sum previously paid is all that remains of the second cause of action to be adjudicated herein. The third cause of action has been discontinued. Recovery under the fourth and fifth causes of action has been granted pursuant to the earlier decision and judgment, and upon those two causes of action there remains only the question of the right to interest on the sums therein awarded. Our main concern is the question of the interpretation of the meaning of the phrase “ current prices ” as applied to Item 2B “ Unclassified Excavation” of the claimant’s contract.
On July 11, 1951 claimant partnership received a letter of intent from the New York State Department of Public Works inquiring as to whether it would be interested in performing the survey and design of a project on the Hudson section of the Thruway from Tuckahoe Eoad to Eoute 9 in the vicinity of Tarrytown, Westchester County. The estimated construction cost of the project was given as $13,500,000. A proposed contract dated October 24, 1951 was first sent to claimant on November 26, 1951. Claimant signed it and returned it on November 28. On December 18, 1951 the State Department of Public Works transmitted to the claimant a copy of the document duly executed by its officials and authenticated.
The contract was entitled:
1 ‘ AGREEMENT EOR THE PRELIMINARY SURVEY, CONTRACT PLANS, ESTIMATES, SPECIFICATIONS AND RIGHTS-OF-WAY MAPS FOR THE PORTION OF THE NEW YORK STATE THRUWAY, HUDSON SECTION, FROM TUCKAHOE ROAD TO ROUTE 9 (DISTRICT SECTION 10) WESTCHESTER COUNTY. ’ ’
It designated the first party as Superintendent and the second party, the claimant, as Engineer. It ivas divided into four parts, namely: Survey; Preliminary Plans; Contract Plans; Eight of Way Maps. It required the Engineer to:
‘ ‘ Render all services and furnish all materials and equipment necessary to provide the State with plans, estimates and other data more specifically prescribed under Part I, Part II, Part III and Part IV as follows:” [We quote the clauses deemed pertinent, viz.:]
Part II
(d) “A preliminary estimate of the construction cost of the Project at current prices, with separate breakdowns for the highway portion for each structure. The structure estimates shall show the approximate quantities required for sub-structure, superstructure and temporary construction.”
*509 Part III
(c) “ An itemized estimate with neat and rounded quantities of the construction cost of each contract of the Project, computed at current prices as used by the Department of Public Works. Separate breakdown estimates shall be prepared in similar form for each structure and for the highway portions of each contract. The structure estimates shall be sub-divided into sub-structure, superstructure and temporary construction. A cost analysis shall accompany the highway estimate.”
provision fob payment
(4c) “ Subject to the completion and acceptance of the work required under Part III of this Agreement, the State shall pay to the engineer, and the engineer agrees to accept as full compensation therefor 3%% of the estimated construction cost, at current prices, of the Project as approved by the superintendent under Part III of this Agreement, less the sum of $120,000.00 (representing the amount paid to the engineer for services under Part II hereof).”
Immediately upon receipt of the letter of intent in July, 1951 claimant started work. Part I, Survey, was completed in December of 1952. Part II, Preliminary Plans, was begun in October, 1951 and completed in December, 1952. Part III, which constituted the final design, was begun in August, 1952 and was completed in October, 1953.
The site of the work was in District No. 8 (the designation of the site as in District No. 10 in the title of the contract was, apparently, a clerical error (see 1951 Legis. Manual, p. 534) of the State Department of Public Works. At the time James S. Bixby was District Engineer. In October, 1951, after a conference with Mr. Bixby, representatives of the claimant were told that they were to use unit prices provided by the State of New York for standard items, but that major items such as excavation, and probably the major concrete items, were to be analyzed and developed by the claimant from knowledge that claimant had acquired about this particular project. Because of the prevalence of rock on the site, an understanding was reached that excavation would be divided into two classifications in accordance with Public Works specifications of January 2, 1951, viz., Item 3B — Classified Earth Excavation, and Item 4B — Classified Bock Excavation. For preliminary purposes it was agreed that a reasonable price for Item 3B would be 90 cents per cubic yard and for Item 4B $3 per cubic yard.
On June 11, 1952 a supplemental agreement which provided for the performance of certain additional work modified the *510 original contract. Under date of October 17, 1952 Mr. Bixby transmitted to the claimant (Exhibit 15) copy of a letter dated September' 29, 1952 addressed to him by J. B. MeMorran, Chief Engineer of the Department of Public Works (Exhibit 16) entitled “Be: Payment to Contractors.” We quote from that letter:
‘ ‘ The Superintendent has ruled that on all existing Design Contracts, the term “ current prices ” shall be interpreted to mean 1951 average bid prices for the District in which the Project is located. Items for which there are no District average prices shall be computed at State-wide average prices.
“ The Engineering News Becord factor, which indicates the trend in construction prices since January 1, 1952, shall be added to or subtracted from the total amount of the estimate in order to establish current prices as of the date final payment to the Engineer is approved. As determined from this factor, construction prices for August 1952 are nine percent (9%) higher than the' 1951 average.
“ Factors for subsequent months will be forwarded as received.”
Under date of November 10, 1952 claimant submitted to Mr. Bixby the preliminary estimate which it had prepared pursuant to that part of the contract hereinabove quoted as Part II (d). This estimate for the cost of the project was $12,931,000, and included therein were the following items:

Item

No. Item

3B Classified Barth Excavation.,
4B Classified Rock Excavation,

Unit Quantity Price Amount

C.Y. 1,250,000 @0.90 $1,125,000.
C.Y. 1,300,000 @3.00 $3,900,000.
Under date of November 21, 1952 Mr. Bixby returned to the claimant all copies of the preliminary estimate for Part II of the Thruway contract with the following direction. “ Please make the following corrections: Use item 2B ‘ Unclassified Excavation ’ at 93$ rather than the earth and rock items shown.” For the derivation of the figure of 93 cents we turn to Exhibit 17. It is entitled:
‘ ‘ STATE OF NEW YORK, DEPARTMENT OF PUBLIC WORKS. WEIGHTED AVERAGE BID PRICES FOR CONTRACTS AWARDED FROM 1951 LETTINGS. ’ ’
The principal witness for the claimant testified that claimant received Exhibit 17 at or about the time it received the letters which are Exhibits 15 and 16. That was in October, 1952. We note that Exhibit 17 contains a copy of a forwarding letter *511 dated April 24, 1952 headed ‘1 to all consultants ’ ’ and addressed to claimant. But whether it was received by claimant promptly after April 24 or not until October is of little consequence insofar as our determination herein is concerned. The importance of the document lies in the contention by the defendant herein that 93 cents was the “ current price ” to be applied to claimant’s contract pursuant to the ruling by the Superintendent of the State Department of Public Works promulgated by the letter of September 29, 1952 and referred to on the trial as the “ McMorran Memorandum ”. (Exhibit 16.)
An examination of Exhibit 17 discloses 20 sheets each entitled: ‘ ‘ WEIGHTED AVERAGE BID PRICES FOR CONTRACTS AWARDED FROM 1951 lettings.” On these sheets are tabulated by Public Works Districts 1 to 10 the item, the unit and the weighted average for the number of contracts reported. For District No. 8 the figure of 93 cents per cubic yard for Item 2B Unclassified Excavation appears to have been obtained from three contracts only. We deem it noteworthy that upon the trial it developed that claimant’s counsel had requested the defense to produce the engineering estimates on the three contracts arising in the 8th District which allegedly formed the basis of the said weighted average bid of 93 cents for Item 2B. This request to him by claimant’s counsel was admitted by the Assistant Attorney-General who was conducting the defense on behalf of the State of New York. He pleaded that he had called upon the Department of Public Works to furnish bim with the three contracts in question; that he had been informed by that department that to date the “ exact contracts ” could not be found. Thereupon the court gave the trial deputy an opportunity to locate them and make them available as soon as possible. The case has now been fully submitted by the Attorney-General with briefs and requests to find. The missing contracts have not been presented to us. Can it be that documents of this importance have been lost or destroyed?
Pursuant to Mr. Bixby’s direction dated November 21, 1952 claimant revised and resubmitted its preliminary estimate. The total cost of the project as revised was $9,971,000. (Exhibit 23.) This included Item 2B Unclassified Excavation 2,550,000 cubic yards at 93 cents. The items of 3B Classified Earth Excavation at 90 cents and 4B Classified Bock Excavation at $3 which appear in Exhibit 20, were omitted from Exhibit 23. But by letter dated December 1, 1952, with which claimant transmitted its revised estimate (Exhibit 23) claimant stated its position as follows:
*512 “Item 2B — Unclassified Excavation
“ Since somewhat more than half of the excavation under this contract is in rock, we had introduced two separate items in the original estimate, namely, earth and rock excavation, on the basis that this arrangement offered a more accurate picture of the prospective work. The unit prices in our original estimate of $.90 per cu. yd. for earth excavation and $3.00 per cu. yd. for rock excavation were arrived at after our study of the problem and after several discussions with representatives of the District Office.
“ If a composite excavation item is desired, a unit price of $2.00 per cu. yd. is proposed to be used as a realistic cost instead of $.93 as directed in your letter.
“This cost of $.93 is a district average of seven [sic] contracts ; we have no indication that the conditions on those seven contracts were similar to those on our contract as far as the ratio of rock to earth excavation is concerned.
“We also conferred on this matter with several contractors experienced on work located in the lower part of this state. One contractor confirmed the $3.00 price for rock, or combined price of $2.00, as a proper estimate for contracts located in Westchester County. He cited a current contract near New York City as having 500,000 c. y. of excavation, about % earth and Vs rock, at a combined bid price of $2.50 per cu. yd. A breakdown of this figure in individual unit prices results in approximately $1.00 for earth and $5.50 for rock. Two other contractors each gave us an estimated price of $6.00 per cu. yd. for rock excavation with haul limited to one mile for work in Westchester County.”
* * *'
1 ‘ The original and five copies of the estimate have been revised in accordance with your instructions and are returned herewith together with one additional copy. In addition to this revised estimate we are also resubmitting one original and six copies of the preliminary estimate recommended by us. We believe the latter estimate to be more realistic with regard to the actual conditions of this contract than that' obtained by the unit prices specified in your letter of November 21.
‘ ‘ Inasmuch as we believe that the estimate obtained by using the unit prices specified by the State is too low, we request that our own estimate be reviewed with the view to its approval for budget purposes. We believe that an estimate lower than that which we have recommended will be misleading.”
Upon cross-examination by the Assistant Attorney-General it was testified that the revised preliminary estimate, Exhibit *513 23, although signed by one of the copartners, was not accepted by the firm; that it was presented under protest; that at the same time Exhibit 20 was ‘ ‘ presented * ® * as being the one that should have been received”; that the McMorran Memorandum combined with Bixby’s letter of November was “ a directive, so we did it, but we didn’t accept it.” And this: “ Q. You say you formally protested this? A. That is correct.” Let us now consider a third estimate. This one, dated May 29,1953, was submitted by claimant pursuant to Part III (e) of the contract which as appears by the clause hereinabove quoted required “ neat and rounded quantities”. This estimate totaled $13,951,480.25. It included Item 2B Unclassified Excavation 3,470,000 cubic yards at $1.75 extended to the sum of $6,720,500. It was transmitted by claimant to Bixby under date of June 1, 1953. It was approved by the Department of Public Works for bidding purposes. Thereupon the Department of Public Works advertised for bids under two contracts, viz., H. T. 53-11 and H. T. 53-13. The three lowest bids received for Item 2B Unclassified Excavation were as follows: For contract H. T. 53-11, $1.70, $1.80, $1.72; for contract H. T. 53-13, $3.30, $3.25, $2.50. Contracts were awarded and construction work proceeded.
Under date of April 5, 1954 claimant transmitted to Bixby its proposed engineering fee estimate. For fee purposes the estimated cost of construction was $13,391,230.33 which included Item 2B Unclassified Excavation 3,195,782 cubic yards at $1.78 extended to $5,688,491.96. In its letter of transmittal claimant called attention to the unit bid prices offered by bidders on Contracts H. T. 53-11 and H. T. 53-13, to which we have just referred, and also reviewed other investigations it had made upon which it based its recommendation and request that $1.78 per cubic yard was a reasonable price for the designated item of work. Bixby replied under date of May 21 as follows: 1 ‘ A considerable part of your letter relates to Item 2B Unclassified Excavation which you have introduced into the estimates at an analyzed price. For your information all fee estimates processed or now being processed in this district utilize the unit price of $0.93. Your estimate will be corrected accordingly when it is returned.”
Thereby claimant’s proposal that $1.78 be used as the current price upon which to base its fee was rejected and claimant was relegated to the position of taking or leaving the 93 cents basic rate. The District Engineer, however, modified the previously mentioned Engineering News Record factor by raising it from 9% to 11%. Next, under date of June 23, 1954, *514 claimant resubmitted its fee estimate, rejected the State’s weighted formula and reiterated its position that a unit price of 93 cents increased by the Engineering News Record factor of 11% to $1.03 was not realistic because of the large quantity of ledge rock encountered on the site. Again it asserted that $1.78 represented a fair and reasonable current price. But the Department of Public Works remained adamant. See letter dated July 13, 1954 and letter dated October 11, 1954. The District Engineer refused to process claimant’s final estimate, refused to release retained percentages because the neat estimate 11 still included unit prices which were not recognized or approved by this office or Thruway Authority. ’ ’
Ultimately the Department of Public Works prepared a proposed final agreement and under date of December 29, 1958 transmitted three copies thereof to claimant with the request that they be executed and returned for further processing. Claimant declined under advice of counsel. In the meantime and on December 15, 1956 claimant had filed notice of intention and on July 22, 1957 had filed a claim in this court. (Decision June 9, 1959.) Claimant contends that the insistence of the Department of Public Works upon the use of the weighted price of 93 cents, arrived at as it was, was capricious and arbitrary and constituted a breach of its contract.
A contract is to be construed against the party preparing it. With respect to the preliminary estimate the contract, merely called for “ current prices ”. The phrase hereinabove quoted, Part II (d) is not qualified by any requirement of approval by the Department of Public Works. Claimant was clearly entitled to use what it reasonably believed to be the prices it found to be currently used in construction work in the area when it made up this estimate.
With respect to the estimate prepared pursuant to Part III (c) wherein the phrase is “current prices as used by the Department of Public Works”, no suggestion was made to claimant nor did it have any knowledge that the State’s representatives intended to use weighted bid averages as current prices. As we have noted at the outset of this discussion the McMorran Memorandum was not promulgated, nor did claimant have any knowledge thereof, until some time after claimant had entered upon performance of the three pertinent phases of its work. In this, as in other respects, the factual situation presented is distinguishable from that reviewed in Edwards v. State of New York (14 Misc 2d 748 [1958]).
If the State of New York had intended to use the weighted formula it should have expressed its intent. That the use of *515 such, formula was novel was admitted by the Attorney-General when he stated: ‘ ‘ This was the first time on these engineering contracts that we used these (weighted average of prices) as current prices, that is a fact.”
The uncontradicted testimony presented upon the trial indicates that claimant was led to believe that because of the prevalence of rock the preliminary bid would be prepared in two classifications. The State’s standard specifications of January 2, 1951 contain separate items for classified earth and rock, Items 3B and 4B. Nothing in claimant’s contract suggests that in preparing estimates and plans for the construction of the project such separate classifications should not be utilized.
It cannot be said that the term “ current prices ” was clear and unambiguous or that the McMorran interpretation of the term was a reasonable one when it appears that in advertising for bids for the construction work the State rejected its own figure of 93 cents and used the figure of $1.75. Moreover, the State’s sole witness, the assistant to the Chief Engineer of the Thruway Authority, testified on direct examination as follows: “ Q. What was current prices for Item 2B in District 8? A. There weren’t any, actually. They vary from job to job. ”
Claimant was entitled to believe that the term as used in its contract meant the fair and reasonable price of doing work in the field. Let us remember that the contract provision for payment, paragraph 4 (c), stated that the Engineer’s commission would be “ 3%% of the estimated construction cost, at current prices, of the Project as approved by the superintendent under Part III ”.
The price approved for the project and used for bid purposes was $1.75. The use of any lesser figure for payment to the claimant was unreasonable and violated the contract terms.
We come to the conclusion that claimant’s position must be sustained. We find that claimant is entitled to recover herein its stipulated commission of 3%% computed upon the quantity of Item 2B Unclassified Excavation set forth in claimant’s letter of April 5, 1954, viz., 3,195,782 cubic yards at $1.75 less $1.03 already paid to it, or a net of 72 cents per cubic yard. On this basis we find that claimant is entitled to recover herein the sum of $80,533.71, to which must be added interest from August 23, 1954.
The date of August 23, 1954 is 60 days after the date on which claimant resubmitted its fee estimate. The contract provided as follows: “ 4g. Final payment, including retained percentages, shall be made within sixty (60) days after the *516 completed plans, estimates, specifications and Rights-of-Way maps for the Project have been accepted by the suPERmTBHDEKT. ’ ’
Referring to this clause the Attorney-General takes the position that claimant failed to make out estimates for Part III in accordance with the contract provisions; that as a result of that failure final estimates could not be prepared; and, therefore, in the event of recovery herein, interest should not begin to run until June 3, 1959, which was the date on which claimant received from the State of New York its estimate denoted “ Supplemental Agreement and Final The argument is not sound. It is undisputed that claimant performed its work satisfactorily. The State withheld approval of payment because claimant sought payment at a rate which the court now finds, in substance, was justly due it. As a matter of fact, under date of July 13, 1954, the District Engineer in his letter to claimant said: 1 ‘ Until these differences are reconciled, we are unable to progress with the further check of your estimate.”
The contract provision cannot be interpreted to deny claimant interest on sums to which it was fairly entitled. Moreover, claimant did not accept the supplemental and final agreement tendered it on June 3, 1959. It was able to obtain the amount which the State .therein conceded was due it only by coming into court and applying for an order of severance and obtaining a judgment.
With respect to the question of interest upon sums which have been paid on account by the State and sums which have been awarded, by the previous decision and judgment of severance, this same date of August 23, 1954 must be used as a basis for computation. Accordingly, with respect to the several items arising out of the first, second, fourth and fifth causes of action claimant is entitled to awards of interest computed from the basic date to the date of payment. Upon the trial no one testified to computations of these several amounts, although the court directed the attention of claimant’s counsel to this omission. He has now submitted in his requests to find certain computations but we find that they do not agree exactly with those certified to us by the Clerk to whom we turned for assistance to fill the omission in the record. This course appears to be proper. (D’Angelo v. State of New York, 200 Misc. 657 [1951]; Rusciano & Son Corp. v. State of New York, 201 Misc. 690, affd. 281 App. Div. 733.) Decision in accordance with the foregoing.